**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| HARRELL CAGE<br><br>v.<br><br>SDS PETROLEUM CONSULTANTS, LLC<br>and NOVA MUD, INC. | **Case No.** _____<br><br>Jury Trial Demanded |

**ORIGINAL COMPLAINT**

**SUMMARY**

1. Harrell Cage (Cage) brings this lawsuit to recover unpaid overtime wages and other damages from SDS Petroleum Consultants, LLC (SDS) and Nova Mud, Inc. (Nova) (collectively, Defendants) under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA) and under the New Mexico Minimum Wage Act, N.M.S.A. § 50-4-20, *et seq.* (NMMWA).

2. Defendants jointly employed Cage as a Drilling Fluid Engineer in Texas and New Mexico.

3. Cage regularly worked more than 40 hours a workweek.

4. But Defendants never paid Cage required "time and a half" overtime wages.

5. Instead, Defendants paid Cage a flat amount for each day worked (a "day rate"), without overtime compensation.

6. Defendants never paid Cage on a "salary basis."

7. Defendants' uniform day rate pay scheme violates the FLSA and NMMWA by depriving Cage of overtime compensation when he worked more than 40 hours a workweek.

**JURISDICTION & VENUE**

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

1

9. This Court has supplemental jurisdiction of the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over Nova because Nova is a domestic corporation.

11. This Court has personal jurisdiction over SDS because SDS conducts substantial business in New Mexico. *See* N.M.S.A. § 38-1-16.

12. Indeed, SDS contracts with Nova to provide Employees, including Cage, to work on Nova's drilling projects across the country, including in New Mexico.

13. Venue is proper because Nova is a resident of New Mexico and maintains its headquarters in Hobbs, New Mexico, which is in this District. 28 U.S.C. § 1391(b)(1).

**PARTIES**

14. Cage worked for Defendants as a Drilling Fluid Engineer in Texas and New Mexico from approximately February 2022 until May 2023.

15. Specifically, Nova required Cage to work and be paid through SDS.

16. Throughout his employment, Nova and SDS classified Cage as an independent contractor to avoid paying him overtime wages.

17. Throughout his employment, Defendants paid him a flat rate for each day he worked, regardless of the total number of hours he worked in a workday or workweek and did not pay him overtime (Defendants' "day rate pay scheme").

18. Defendants jointly employed Cage and paid him a flat amount for each day worked and failed to pay him overtime when he worked more than 40 hours in a workweek in violation of the FLSA and NMMWA.

19. Nova is a New Mexico company that maintains its headquarters in Hobbs, New Mexico.

20. Nova may be served with process by serving its registered agent: **Ken Bromley, 5800 Nova Drive, Hobbs, New Mexico 88240**, or wherever he may be found.

21. SDS is a Texas corporation that maintains its headquarters in Tyler, Texas.

22. SDS may be served with process by serving its registered agent: **Scott D. Stovall, 1406 Rice Road, Suite 400, Tyler, Texas 75703**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

23. At all relevant times, Nova was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

24. At all relevant times, SDS was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

25. At all relevant times, Nova was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

26. At all relevant times, SDS was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

27. At all relevant times, Nova has been part of an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

28. At all relevant times, SDS has been part of an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

29. At all relevant times, Nova has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, equipment, hardhats, cell phones, computers, printers, personal protection equipment, etc.) that have been moved in or produced for commerce.

30. At all relevant times, SDS has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, equipment, hardhats, cell phones, computers, printers, personal protection equipment, etc.) that have been moved in or produced for commerce.

31. In each of the past 3 years, Nova has had and has an annual gross volume of sales made or business done of not less than $1,000,000.00.

32. In each of the past 3 years, SDS has had and has an annual gross volume of sales made or business done of not less than $1,000,000.00.

33. At all relevant times, Cage was Nova's "employee" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

34. At all relevant times, Cage was SDS's "employee" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

35. At all relevant times, Cage was engaged in commerce or in the production of goods for commerce.

36. At all relevant times, Defendants treated Cage as an employee and uniformly dictated the pay and other employment practices Defendants applied to him.

37. Indeed, at all relevant times, Defendants jointly employed Cage.

38. Defendants' misclassification of Cage as an independent contractor did not alter his status as an employee for purposes of the FLSA.

39. Defendants uniformly applied their policy of paying Cage a day rate with no overtime compensation.

40. As a result of Defendants' uniform day rate pay scheme and in violation of the FLSA, Cage did not receive overtime compensation when he worked more than 40 hours in a workweek. 29 U.S.C. § 207(a) & (e).

## FACTS

41. Nova touts itself as "one of the most prominent Drilling Fluids companies in the Permian Basin"; its "mud engineers manage all fluid types: weighted/un-weighted fresh/brine gel/polymer water muds synthetic and diesel based oil mud."[1]

42. SDS holds itself out as "one of the leading upstream oil and gas consulting firms in the United States," with a "focus and commitment [ ] to our customers in getting the right supervisor for each job. We take pride in ensuring we have the absolute best person for our clients' needs while taking care of our people."[2]

43. To carry out their business objectives, Nova hires, through SDS, Employees like Cage to provide drilling fluids services on oil and gas wells.

44. Defendants misclassified Cage as an independent contractor to avoid paying him overtime wages.

45. Defendants did not hire Cage on a project-by-project basis.

46. Defendants hired Cage for an indefinite duration.

47. Defendants hired and treated Cage just like their regular employees.

48. Indeed, Nova directly employs workers it classifies as its employees to perform the same job functions using the same equipment, knowledge, and procedures as the job functions that Cage performs on behalf of Nova and SDS.

49. Employees of Nova and SDS who perform the same job functions as Cage also have the same or similar qualifications and experience as Cage.

50. Nova, jointly with SDS, controlled all meaningful aspects of Cage's job, including his duties and rate and method of pay.

---

[1] http://www.novamud.com/features/pagelist-templates (last visited May 29, 2024).
[2] https://sdspetroleumconsultants.com/markets/land/ (last visited May 29, 2024).

51. Nova and SDS dictated Cage's day rate on a "take it or leave it" basis without negotiation.

52. Nova and SDS jointly controlled Cage's schedule and assignments.

53. Nova and SDS told Cage the locations and dates he had to work.

54. In other words, Nova and SDS told Cage where to go and when to be there, to complete the job assignments Nova and SDS told him to complete.

55. Nova and SDS jointly controlled Cage's day-to-day work.

56. Nova and SDS jointly required Cage to follow their policies, procedures, plans, protocols, and specifications.

57. Nova and SDS required Cage's work to strictly adhere to the quality standards Defendants put in place.

58. Nova required Cage to work on the jobsite within the parameters of the well drilling plan established by Nova.

59. Indeed, Cage's daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by Nova and SDS.

60. Virtually every job function was predetermined by Nova and SDS, including the tools and equipment used at the job site, the testing and analysis to undertake, the reports to complete, the schedule of work, and related work duties.

61. Nova and SDS required Cage to perform drilling fluid testing and analysis, in accordance with the industry-wide, standard American Petroleum Institute (API) drilling fluid tests and analyses.

62. Nova and SDS required Cage to perform the standardized API drilling fluid testing and analysis using equipment, computers, and software provided and approved by Nova and SDS.

63. Nova and SDS required Cage to submit these fluid analysis reports to Nova twice per workday for review and approval, prior to Cage submitting the reports to Nova's clients, who owned the well drilling sites.

64. Nova and SDS prohibited Cage from varying his job duties outside of predetermined parameters and required Cage to follow Nova's and SDS's policies, procedures, and directives.

65. In sum, Defendants assigned Cage to a particular well drilling site owned and/or operated by Nova's client, to perform the assigned drilling fluid testing, analysis, and formulation in accordance with Defendants' and industry standards.

66. Cage is not required to possess any unique or specialized skillset (other than that maintained by all other drilling fluid engineers, including those classified as employees by Nova) to perform his assigned job duties.

67. Cage did not use any specialized skills to seek or obtain additional jobs or work opportunities.

68. Without the job performed by Cage, Nova would not be able to complete its business objective of providing properly formulated drilling fluids to its clients.

69. Likewise, without the job performed by Cage and the Day Rate Employees, SDS would not be able to complete its business objectives of providing services to energy operators, including Nova.

70. Cage relied on Nova and SDS for work and compensation.

71. Indeed, Cage had little or no opportunity to experience a profit or loss related to his employment.

72. His income from his work was limited to the day rate Defendants paid him.

73. Cage did not share in Defendants' financial success.

74. Cage could not contract or subcontract the work Defendants assigned to him.

7

75. Cage did not substantially invest in the tools required to complete the overall job duties he was assigned.

76. Rather, Nova and SDS incurred the large-scale business and operating expenses like payroll, marketing, equipment, tools, computers, and materials.

77. Specifically, Nova and SDS provided the fluid analysis equipment, such as chemical agents, titrating agents, viscosity funnel, oil and water retort, filter press, high pressure high temperature filter press, and emulsion stability tester, among others.

78. Cage did not market his services while employed by Nova and SDS.

79. Nova and SDS jointly set Cage's work schedule, which prohibited him from working other jobs for other companies while working for Defendants.

80. Indeed, Cage was required to travel and live at his assigned jobsites for two weeks or more at time, during periods known in the industry as "hitches."

81. At all relevant times, Nova and SDS jointly maintained control, oversight, and direction of Cage, including, but not limited to, hiring, firing, disciplining, and other employment practices.

82. At all relevant times, Nova and SDS jointly possessed the authority to hire, fire, and discipline Cage.

83. At all relevant times, Nova and SDS jointly supervised and controlled Cage's schedules, rate and method of pay, work, and other conditions of employment.

84. At all relevant times, Nova and SDS jointly maintained employment records for Cage.

85. In sum, at all relevant times, as a matter of economic reality under federal and New Mexico law, Nova and SDS jointly employed Cage. *See* N.M.S.A. § 51-1-42(F)(5).

86. Cage worked for Defendants on a day rate basis.

87. Cage worked for Defendants as a Drilling Fluid Engineer in Texas from approximately February until May 2022 and in New Mexico from approximately May 2022 until February 2023.

88. As a Drilling Fluid Engineer, Cage's primary job duties included formulating appropriate drilling fluids for a particular well drilling site, testing and monitoring the drilling fluid, adjusting the drilling fluid's properties as appropriate, availability of the necessary materials to test and formulate the drilling fluid at the well drilling site, and submitting twice-daily reports to Defendants.

89. Cage typically worked 16-18 hours a workday, 7 days a workweek, for two-week "hitches."

90. Throughout his employment, Nova paid Cage on a day rate basis (without overtime) through SDS.

91. Specifically, throughout his employment, Nova paid Cage a day rate through SDS of approximately $900 for each day he actually worked, regardless of the number of hours he worked that workday (or workweek) and failed to pay him overtime compensation.

92. Defendants did not pay Cage a guaranteed salary.

93. Rather, Defendants only paid Cage his day rate for the days he actually worked.

94. If Cage and the Day Rate Employees did not work, he did not get paid.

95. Thus, Cage was not paid on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 143 S. Ct. 677, 685 (2023) ("Daily-rate Employees, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

96. Cage's day rate did not increase when he worked more than 40 hours in a workweek.

97. Cage did not receive overtime compensation when he worked more than 40 hours in a workweek.

98. Cage worked in accordance with the schedule set by Defendants.

9

99. Defendants knew Cage worked 16 to 18 hours a workday, for 7 days a workweek because Defendants expected and required him to do so.

100. Indeed, Nova and SDS's records reflect that Cage regularly worked far in excess of 40 hours in certain workweeks.

101. Rather than receiving "time-and-a-half" overtime premium compensation as required by the FLSA and NMMWA, Nova paid Cage a day rate through SDS, regardless of the number of hours he worked in a workday or workweek, including when he worked more than 40 hours in a workweek.

102. Because Defendants failed to pay Cage on a "salary basis," he was a non-exempt employee entitled to overtime wages.

103. But Defendants did not pay Cage overtime wages when he worked more than 40 hours in a workweek, in willful violation of the FLSA and in violation of the NMMWA.

### NOVA'S AND SDS'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

104. Cage realleges and incorporates all other paragraphs by reference.

105. Nova knew it was subject to the FLSA, including its overtime provisions.

106. SDS knew it was subject to the FLSA, including its overtime provisions.

107. Nova knew the FLSA requires it to pay employees, including Cage, overtime wages of 1.5 times his regular rate of pay for all hours worked in excess of 40 hours a workweek.

108. SDS knew the FLSA requires it to pay employees, including Cage, overtime wages of 1.5 times his regular rate of pay for all hours worked in excess of 40 hours a workweek.

109. Nova and SDS knew they jointly controlled work and job duties.

110. Nova and SDS knew they jointly prohibited Cage from straying from Nova's and SDS's strict procedures, plans, protocols, and specifications.

111. Nova and SDS knew they jointly controlled Cage's schedule.

112. Nova and SDS knew Cage regularly worked 16 to 18 hours a workday, for 7 days a week, for 2-week "hitches."

113. Nova and SDS knew they jointly required Cage to live at or near the jobsites during his 2-week "hitches."

114. Nova and SDS knew Cage's schedule necessarily prohibited him from working other jobs while working for Defendants.

115. Nova and SDS knew Cage relied on Defendants for work and compensation.

116. Nova and SDS knew they jointly controlled Cage's rate and method of pay.

117. Thus, Nova and SDS knew that they jointly employed Cage.

118. Nova and SDS knew they jointly paid Cage on a day-rate basis.

119. Nova and SDS knew they did not pay Cage overtime wages when he worked more than 40 hours in a workweek.

120. Rather, Nova and SDS knew they jointly paid Cage a flat daily rate, regardless of the number of hours he worked that workday or workweek.

121. Nova and SDS knew they did not pay Cage on a "salary basis."

122. Nova and SDS knew they did not pay Cage any minimum guaranteed salary.

123. Nova and SDS knew their day-rate pay scheme did not satisfy the salary-basis test necessary to classify Cage as exempt from the FLSA's overtime provisions.

124. Thus, Nova and SDS knew, or should have known, Cage was a non-exempt employee and, therefore, entitled to overtime compensation when he worked more than 40 hours in a workweek.

125. Nova and SDS knew Cage worked more than 40 hours a workweek because Defendants jointly expected and required him to do so.

126. Nonetheless, Nova and SDS jointly failed to pay Cage overtime wages when he worked in excess of 40 hours in a workweek.

127. Nova's and SDS's joint failure to pay Cage overtime compensation was neither reasonable nor made in good faith.

128. Nova and SDS knowingly, willfully, and/or in reckless disregard carried out their illegal day-rate pay scheme that deprived Cage of overtime compensation for hours worked in excess of 40 hours in a workweek in willful violation of the FLSA.

129. Nova and SDS knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA.

### NOVA'S AND SDS'S FLSA VIOLATIONS WERE NOT DONE IN GOOD FAITH

130. Cage incorporates all other paragraphs by reference.

131. Nova and SDS did not seek the advice of counsel regarding their day-rate pay scheme.

132. Nova and SDS did not receive advice from counsel regarding their day-rate pay scheme.

133. Nova and SDS did not rely on the advice of counsel in implementing their day-rate pay scheme.

134. Nova and SDS did not investigate whether their day-rate pay scheme satisfied the salary-basis test.

135. Nova and SDS did not investigate whether Cage was non-exempt.

136. Nova's and SDS's decision to pay Cage according to their day-rate pay scheme was neither reasonable nor made in good faith.

137. Nova's and SDS's decision not to pay Cage overtime compensation was neither reasonable nor made in good faith.

## COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

138. Cage realleges and incorporates all other paragraphs by reference.

139. As set forth herein, Defendants violated, and are violating, the FLSA, 29 U.S.C. § 207, by employing Cage in a covered enterprise for workweeks longer than 40 hours without paying him overtime wages for his work in excess of 40 hours a workweek at not less than 1.5 times his regular rate of pay.

140. Defendants knowingly, willfully, and/or in reckless disregard carried out this illegal pattern and practice of failing to pay Cage overtime compensation.

141. Defendants' joint failure to pay Cage overtime compensation was neither reasonable, nor was the decision not to pay him overtime compensation made in good faith.

142. Accordingly, Cage is entitled to overtime wages under the FLSA in an amount equal to 1.5 times his regular rate of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE NMMWA

143. Cage realleges and incorporates all other paragraphs by reference.

144. The conduct alleged in this Complaint violates the NMMWA. *See* N.M.S.A. § 50-4-20, *et seq*.

145. At all relevant times, Nova has been an "employer" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-21(B).

146. At all relevant times, SDS has been an "employer" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-21(B).

147. At all relevant times, Nova has been an "enterprise in business" within the meaning of the NMMWA.

148. At all relevant times, SDS has been an "enterprise in business" within the meaning of the NMMWA.

149. At all relevant times, Nova employed Cage as a covered "employee" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-21(C).

150. At all relevant times, SDS employed Cage as a covered "employee" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-21(C).

151. At all relevant times, Nova has, and has had, employees (including Cage) engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof.

152. At all relevant times, SDS has, and has had, employees (including Cage) engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof.

153. The NMMWA requires employers, like Nova and SDS, to pay non-exempt employees, including Cage, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in any 7-day week. *See* N.M.S.A. § 50-4-22(D).

154. Cage is entitled to overtime pay under the NMMWA.

155. Nova and SDS violated, and are violating, the NMMWA by employing Cage in a covered enterprise for workweeks in excess of 40 hours without paying him overtime wages of not less than 1.5 times his regular rate of pay for all hours worked in excess of 40 in a 7-day week. *See* N.M.S.A. § 50-4-22(D).

156. Nova's and SDS's improper practices at issue were, and are, part of a continuing course of conduct, entitling Cage to recover for all such violations, regardless of the date they occurred.

157. Defendants' unlawful conduct harmed Cage by depriving him of the premium overtime wages he is owed.

158. Accordingly, Cage is entitled to recover his unpaid overtime wages in amount equal to 1.5 times his regular rate of pay for his hours worked in excess of 40 in a 7-day week; "an additional amount equal to twice the unpaid … wages" as treble damages, N.M.S.A. § 50-4-26(C); and reasonable attorneys' fees and costs incurred in this action, N.M.S.A. § 50-4-26(E).

## JURY DEMAND

159. Cage demands a trial by jury on all counts.

## RELIEF SOUGHT

WHEREFORE, Cage prays for the following relief:

a. An Order pursuant to Section 16(b) of the FLSA finding Defendants jointly and severally liable for unpaid back wages due to Cage, as well as for liquidated damages in an amount equal to his unpaid compensation;

b. An Order finding Defendants jointly and severally liable to Cage for all unpaid back wages owed under the NMMWA, plus treble damages in an amount equal to two times his unpaid wages;

c. A Judgment against Defendants awarding Cage all his unpaid wages, liquidated damages, treble damages, and other damages available under the FLSA and NMMWA;

d. An Order awarding attorneys' fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Dated: June 6, 2024.

Respectfully submitted,

By: */s/ Cory S. Stott*
**Cory S. Stott**

**Michael A. Josephson**
TX Bar No. 24014780
**Andrew W. Dunlap**
TX Bar No. 24078444
**Cory S. Stott**
TX Bar No. 24076964

**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
cstott@mybackwages.com

**Richard J. (Rex) Burch**
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS FOR CAGE**