IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HARRELL CAGE,

        Plaintiff,

v.   No. 2:24-cv-00575-KWR-DLM

SDS PETROLEUM CONSULTANTS, LLC,
And NOVA MUD, INC.,

        Defendants.

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND CONDUCT LIMITED DISCOVERY

THIS MATTER comes before the Court upon Defendant SDS Petroleum Consultants, LLC motions to compel arbitration, and alternatively, to transfer forums, Doc. 16, and Defendant Nova Mud, Inc.'s motions to compel arbitration, Doc. 10, and conduct limited discovery, Doc. 28. Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' motions are not well taken, and therefore, are **DENIED**.

### BACKGROUND

Plaintiff Harrell Cage sued SDS Petroleum Consultants, LLC ("SDS") and Nova Mud, Inc. ("Nova") to recover unpaid overtime wages and damages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-20, *et seq.*, in federal court. Doc. 1 at 1.

Defendants subsequently moved to compel arbitration under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6) and the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"). Doc. 10 at 1; Doc. 16 at 1. In support, Defendants point to an arbitration clause in an Independent

Consultant Agreement (the "Agreement") between SDS and Bard L. Fluid Consultants LLC signed on January 5, 2022. Doc. 16 at 13 (Ex. B). Plaintiff signed the Agreement on behalf of Bard L. Fluid Consultants as its President. Doc. 16 at 21 (Ex. B). The arbitration clause states:

> "All claims, disputes, controversies, or disagreements of any kind whatsoever including any claim arising out of, in connection with, or related to this Agreement, and/or the Services performed for any Client pursuant to this Agreement that may arise between Consultant and SDS, including any claim that may arise between, on one hand, Consultant and, on the other hand, SDS or SDS's officers, employees, managers, owners or agents in their capacity as such, or any of SDS's contractors or Clients who are anticipated and desired third party beneficiaries to this ADR . . . ."
>
> "[T]he parties agree to resolve any disputes relating to or arising out of this agreement, or the Services performed for any Client pursuant to this Agreement, through binding arbitration . . . ."

Doc. 16 at 17 (Ex. B). The Agreement also contains a provision allocating costs:

> "Consultant and SDS shall each pay for their own attorneys' fees or costs of representation for purposes of the mediation and arbitration unless otherwise provided by law or other terms of this Agreement. The parties shall each pay an equal amount of the mediator and arbitrator's fees, costs and expenses. If any third-party beneficiary participates in any arbitration pursuant [to] this ADR or Agreement, such third party shall pay its own attorneys' fees and costs for purposes of such arbitration proceedings, unless otherwise provided by law."

Doc. 16 at 18 (Ex. B). The Agreement concludes with severability and choice of law provisions. Doc. 16 at 21 (Ex. B).

Defendants argues that Plaintiff Cage, who brought the current lawsuit in his individual capacity, is bound by the Agreement signed by his company.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because this action involves a federal question under the FLSA, 29 U.S.C. § 216, and the state-law claims arise from a common nucleus of operative facts, N.M. Stat. Ann. § 50-4-22.

**DISCUSSION**

The Federal Arbitration Act ("FAA") creates a remedy for a party to enforce an arbitration agreement. 9 U.S.C. § 4; *see also Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 931–32 (10th Cir. 2001) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220 n.7 (1983)). It applies to written arbitration clauses contained in contracts evidencing a transaction involving interstate commerce. 9 U.S.C. §§ 1, 2; *see also Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273 (1995). The FAA applies to this dispute because the contract involves services conducted, and parties located, across several states. No party denies its applicability.

The FAA makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009). "[T]his provision [reflects] both a liberal federal policy favoring arbitration, . . . and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and internal quotations omitted); *see also Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017). It follows that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 648 (1986) (citation and internal quotations omitted).

Neither SDS nor Nova sufficiently demonstrated that an agreement existed between them and Plaintiff individually, and therefore, cannot show that Plaintiff agreed to arbitrate this dispute. Even if Plaintiff agreed to arbitrate this dispute, the arbitration provision at issue prevents him from effectively vindicating his statutory rights. *See Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 378–81 (10th Cir. 2016). The Court, therefore, must deny Defendants' motions to compel arbitration.

I.  **Plaintiff did not agree to arbitrate this dispute.**

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). This issue is for the courts, not arbitrators, to decide. *See Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105–06 (10th Cir. 2020); *AT&T Techs.*, 475 U.S. at 649. "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 297 (2010).

"The scope of the arbitration agreement, including the question of who it binds, is a question of state contract law." *Reeves v. Enterprise Prods. Partners*, 17 F.4th 1008, 1011–12 (10th Cir. 2021) (citing *Arthur Anderson L.L.P. v. Carlisle*, 556 U.S. 624, 630–31 (2009)); *see also GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 437 (2020). The parties agree that Texas law applies. *See* Doc. 16 at 4–5; Doc. 21 at 6.[1]

---

[1] The general rule is that courts apply federal choice-of-law principles in federal question cases. *See Ellis v. Liberty Life Assurance Co. of Boston*, 958 F.3d 1271, 1283 (10th Cir. 2020). Federal courts often apply the Restatement (Second) of Conflict of Laws to ascertain the applicable state law. *See Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) ("Federal common law follows the approach outlined in the Restatement (Second) of Conflict of Laws."); *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 58 F.3d 778, 809 (5th Cir. 2009) (Owen, J. dissenting) ("[I]n the absence of guidance from Congress, courts have relied upon the Restatement (Second) of Conflicts of the Law for the content of federal common law."); *Eli Lilly Do Brasil, Ltda. V. Federal Express Corp.*, 502 F.3d 78, 81 (2d Cir. 2007) ("[W]hen conducting a federal common law choice-of-law analysis, absent guidance from Congress, we may consult the Restatement (Second) of Conflict of Laws."). The Restatement recommends applying the law chosen by the parties in a choice of law provision. *See* Restatement (Second) of Conflict of Laws § 187 (1971). Here, the Agreement states that Texas law controls. Doc. 16 at 21 (Ex. B). While following a choice of law provision may not make much sense where the non-movant is arguing that they are not a party to the agreement, Plaintiff accepts that Texas law controls the state law issues in this case. *See* Doc. 21 at 4. Even absent a choice of law provision, the Agreement has substantial contacts with Texas. *See* Restatement (Second) of Conflicts §188 (1971).

By default, Plaintiff is not bound to the arbitration provision because Texas law does not consider him to be a party to the Agreement. Though Plaintiff signed the Agreement, he did so in a representative, not an individual, capacity. Doc. 16 at 21 (Ex. B). Plaintiff signed the agreement under the title of "President" to a clearly disclosed principal, Bard L. Fluid Consultants LLC. Doc. 16 at 13, 21 (Ex. B). "Texas courts have long held that a signatory will not be held personally liable where the body of the contract indicates that the signature was in a representative capacity." *Plan B. Holdings, LLC v. RSLLP*, 681 S.W.3d 443, 454 (Tex. Ct. App. 2023); Restatement (Second) of Agency § 156 (1958) ("In the absence of a manifestation to the contrary therein, an unsealed written instrument is interpreted as the instrument of the principal and not of the agent if, in the signature or description of the parties, the name of the principal and agent both appear, the agent indicating his agency."). "[A]n agent who signs for a disclosed principal is not a party to the agreement unless the agent expressly agrees to become a party." *Plan B Holdings*, 681 S.W.3d at 455 (citing Restatement (Second) of Agency § 320 (1958) ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract.")).

Yet the law may still treat Plaintiff as a party to the Agreement if certain conditions exist. An arbitration clause may be enforced "by or against nonparties to the contract" to the extent permitted by traditional state law principles. *See Reeves*, 17 F.4th at 1011–12; *Arthur Anderson*, 556 U.S. at 631. This includes through equitable theories of "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Reeves*, 17 F.4th at 1011–12 (citing *Arthur Anderson*, 556 U.S. at 630–31); *see also in re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005). "[T]he parties seeking to compel arbitration

. . . have the burden to show that the arbitration agreement applies to the nonsignatory plaintiff[]." *Jacks*, 856 F.3d at 1304 (citation omitted).

Here, Defendants collectively argue that Plaintiff is bound as a third party to the Agreement between Defendant SDS and Bard L. Fluid Consultants LLC under three theories: alter ego, direct-benefits estoppel, and assumption or agency.[2] The Court finds, however, that Defendant has failed to meet its burden to prove that Plaintiff is bound to the Agreement under any of these theories.

  A.  Alter Ego

The Court should not disregard the corporate form in this instance. *See Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006) ("A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations."); *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1460–61 (10th Cir. 1995) ("Courts do not lightly pierce the corporate veil, even in deference to the strong policy favoring arbitration." (citation and internal quotations omitted)). "Alter ego applies when there is [1] such unity between corporation and individual that the separateness of the corporation has ceased and [2] holding only the corporation liable would result in injustice." *Castleberry v. Branscrum*, 721 S.W.2d 270, 272 (Tex. 1986).

Defendants do not provide sufficient evidence for the Court to conclude that Plaintiff disregarded or abused the corporate form. "An individual's standing as an officer, director, or majority shareholder of an entity alone is not sufficient to support a finding of alter ego." *Cappuccitti v. Gulf Indus. Prods., Inc.*, 222 S.W.3d 468, 482 (Tex. Ct. App. 2007). Rather, the separateness of the corporation is "determined from the 'total dealings' of the corporation and the

---

[2] The Court only considers the specific equitable theories briefed because Defendants have the burden to show that Plaintiff is bound by the agreement.

individual owner, including the degree to which corporate and individual property have been kept separate, the amount of financial interest, ownership, and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *See U.S. KingKing, LLC v. Precision Energy Servs., Inc.*, 555 S.W.3d 200, 213 (Tex. Ct. App. 2018) (citation omitted); *Cappuccitti*, 222 S.W.3d at 482. Defendants do not provide any evidence of this conduct occurring.

Likewise, the Court cannot conclude that omitting Plaintiff as a party is unjust. "[A] subjective perception of unfairness by an individual judge or juror" is insufficient. *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008). Rather, "disregarding the existence of the corporation as a separate entity" requires "the kinds of abuse, specifically identified, that the corporate structure should not shield—fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like." *SSP Partners*, 275 S.W.3d at 455; *see also JNM Express LLC v. Lazano*, 688 S.W.3d 327, 335 (Tex. 2024). Plaintiff's attempt to vindicate non-contractual, statutory claims in a judicial rather than an arbitral forum, even if unfair, simply does not rise to this level. And Plaintiff does not defraud Defendant simply by arguing that he is Defendants' employee for FLSA purposes. *See generally Acosta v. Jani-King of Okla., Inc.*, 905 F.3d 1156, 1159–60 (10th Cir. 2018) ("In determining whether an individual is an employee under the FLSA, the inquiry is not limited to the contractual terminology between the parties or the way they choose to describe the working relationship.").

### B. Direct-Benefits Estoppel

A direct-benefits estoppel theory does not bind Plaintiff to the arbitration clause. "Under 'direct benefits estoppel,' a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes." *In re Kellogg*, 166 S.W.3d at 739. In other words, "a non-signatory plaintiff may be

compelled to arbitrate if it seeks to enforce terms of a contract containing an arbitration provision." *Id.* This theory does not apply simply because Plaintiff generally benefitted from the Agreement by receiving work. The benefit must instead come from legal claims being made.

As the name suggests, the benefit sought must be "direct," meaning that the non-signatory's "claims are 'based on a contract' containing an agreement to arbitrate." *In re Kellogg*, 166 S.W.3d at 740 (citing *in re FirstMerit Bank*, 52 S.W.3d 749, 755 (Tex. 2001)). "[A]lthough a non-signatory's claim may relate to a contract containing an arbitration provision, that relationship does not, in itself, bind the non-signatory to the arbitration." *Id.* at 741. "Instead, a non-signatory should be compelled to arbitrate a claim only if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision." *Id.*; *see also Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 637 (Tex. 2018). This means that the "claim depends on the contract's existence and cannot stand independently—that is, the alleged liability 'arises solely from the contract or must be determined by reference to it . . . .'" *Jody James Farms*, 547 S.W.3d at 637 (citing *in re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) & *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527–28 (Tex. 2015)). "In the archetypal direct-benefits case, the party opposing arbitration seeks to enforce the terms of an agreement with an arbitration clause." *Id.*

Though Plaintiff's statutory claims clearly relate to the Agreement (because an FLSA violation presupposes an employment relationship), direct-benefits estoppel requires more. *See in re Kellogg*, 166 S.W.3d at 741; *Jody James Farms*, 547 S.W.3d at 637–38 ("[A] mere relationship between the signatory's claims and the contract containing an arbitration provision [is insufficient]."). Plaintiff is neither enforcing the terms of the Agreement nor bringing claims "based on" the Agreement. *See in re Kellogg*, 166 S.W.3d at 740. And the alleged FLSA violation

is not premised on any violation of the Agreement's terms. *Cf. Rachal v. Reitz*, 403 S.W.3d 840, 847–48 (Tex. 2013). Rather, Plaintiff alleges that Defendants practice to not pay overtime violates federal and state labor law—a question distinct from the contents of the contract.

Nonliability does not arise from the Agreement's terms. *Cf. Lennar Homes of Tex. Land & Constr., Ltd. V. Whiteley*, 672 S.W.3d 367, 378–79 (Tex. 2023). Plaintiff does not have to rely on the Agreement to establish his status as an employee under the FLSA. "[D]etermining whether an individual is covered by the FLSA . . . is not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.'" *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998). "Instead, the economic realities of the relationship govern," which requires courts to focus on non-contractual factors. *Id*. at 1440–41. Furthermore, an "individual employee's right to minimum wage and to overtime pay under the [FLSA]" is "nonwaivable" and "cannot be abridged by contract." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Defendants, therefore, will not be able to evade liability by relying on the Agreement.

C. <u>Agency or Assumption</u>

An agency theory does not bind Plaintiff to his principal's arbitration agreement. As discussed *supra*, "an agent who signs for a disclosed principal is not a party to the agreement unless the agent expressly agrees to become a party." *Plan B Holdings*, 681 S.W.3d at 455; *see also in re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 210 (Tex. 2007) ("[A]rbitration clauses do not automatically cover all corporate agents or affiliates."). Nova argues, however, that *in re Vesta*

*Ins. Grp., Inc.*, 192 S.W.3d 759 (Tex. 2006), justifies a departure from this default rule. Doc. 23 at 4–6.[3]

In *in re Vesta*, the Texas Supreme Court confronted the problem of claimants trying to avoid arbitration clauses by suing a company's agents (nonsignatories) for tortious interference rather than raising contractual claims against the company (signatory) directly. *See* 192 S.W.3d at 761–61. It observed that "corporations must act through human agents," and that "[w]hen contracting parties agree to arbitrate all disputes 'under or with respect to' a contract, . . . they generally intend to include disputes about their agents' actions . . . ." 192 S.W.3d at 762 (holding that a tortious interference claim against a signatory's agents must be arbitrated). "If arbitration clauses only apply to contractual signatories, then this intent can only be accomplished by having every [agent] . . . sign the contract or be listed as a third-party beneficiary." *Id.*

The Court then reasoned that including the actions of agents in broad arbitration clauses is sometimes necessary to "place [arbitration] clauses on an equal footing with all other parts of a corporate contract." *In re Vesta*, 192 S.W.3d at 762; *see also in re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007) ("[I]f two companies sign a contract to arbitrate disputes, one cannot avoid it by recasting a contract dispute as a tortious interference claim against an [agent] of the other." (citing *in re Vesta*, 192 S.W.3d at 762–63)). Nova now argues that because the arbitration provision broadly includes "all claims . . . arising out of, in connection with, or related to" the Agreement, Doc. 16 at 17 (Ex. B), Plaintiff (agent) is bound by his principal's arbitration agreement.

---

[3] Nova refers to this theory as "assumption or agency." Doc. 23 at 4. However, it is likely just a variant of direct-benefits estoppel applied to tortious interference claims against a signatory principal's agents. *See in re Vesta*, 192 S.W.3d at 761–62 ("Tortious interference claims do not fall comfortably in either category [of direct-benefits estoppel].").

This case, however, is distinguishable from the factual circumstances justifying the rule in *in re Vesta*. Namely, its rule permits agents (nonsignatories) of a signatory to enforce an arbitration clause against a signatory. *See in re Kaplan*, 235 S.W.3d at 209 ("[T]he agents of a signatory may sometimes invoke an arbitration clause even if they themselves are nonsignatories and a claimant is not suing on the contract."). Here, it is the signatory moving to enforce an arbitration clause against a *nonsignatory* claimant. Unlike the plaintiff in *in re Vesta* (who was undisputably bound by the arbitration clause), *see* 192 S.W.3d at 760–61, Plaintiff is disputing whether he is a party to the arbitration agreement at all. And Plaintiff is not trying to avoid arbitration by suing SDS's or Nova's agents. In short, the special rule *in re Vesta* is inapplicable here and does not otherwise justify a departure from the status quo.

## II.    Even if Plaintiff is subjected to the contract, the arbitration provision prevents Plaintiff from effectively vindicating his statutory rights.

As established above, none of the equitable theories raised require Plaintiff to arbitrate the statutory claims in this case. *See supra* section I. Even assuming that Plaintiff is subject to the arbitration clause in the Agreement, however, its terms would prevent Plaintiff from effectively vindicating his statutory rights.[4] The arbitration clause at issue states:

> "Consultant and SDS *shall each pay for their own attorneys' fees or costs* of representation for purposes of the mediation and arbitration unless otherwise provided by law or other terms of this Agreement. The *parties shall each pay an equal amount of the mediator and arbitrator's fees, costs and expenses*. If any third-party beneficiary participates in any arbitration pursuant [to] this ADR or Agreement, *such third party shall pay its own attorneys' fees and costs* for purposes of such arbitration proceedings, unless otherwise provided by law."

---

[4] Defendant argues that the effective vindication issue is for an arbitrator, not this Court, to decide. Doc. 26 at 6–7. The Court, however, is plainly permitted to decide this matter. The Agreement contains no provision delegating "gateway" questions to an arbitrator. *See Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 185–86 (2019) ("[W]e presume that parties have *not* authorized arbitrators to resolve certain 'gateway' questions . . . ." (emphasis original)). Courts have also routinely decided the effective vindication question. *See, e.g., Nesbitt*, 811 F.3d at 371; *Shankle v. B-G Mgmt. of Colo., Inc.*, 163 F.3d 1230 (10th Cir. 1999).

Doc. 16 at 18 (Ex. B) (emphasis added).

At issue in this case is the arbitration cost-sharing language emphasized above. The effective vindication doctrine provides that arbitration under the FAA is proper "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, [so that] the statute will continue to serve both its remedial and deterrent function." *See Mitsubishi Motors*, 473 U.S at 636–37; *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235–36 (2013). The FLSA provides that a successful plaintiff must be awarded "reasonable attorney's fee[s] to be paid by the defendant, and costs of the action." *See* 29 U.S.C. § 216(b). The arbitration provision appears to conflict with this mandate by requiring that the parties bear their own attorney's fees and split arbitration costs.

While the clause's language appears to give the arbitrator discretion over whether to award fees and costs to comply with conflicting laws (such as the FLSA), the Tenth Circuit has nonetheless concluded that this provision prevents a plaintiff from effectively vindicating their FLSA claim. *See Nesbitt*, 811 F.3d at 380–81. In *Nesbitt*, the Court noted that the arbitration agreement gave the arbitrator discretion regarding the award of attorney's fees and costs, and that the arbitration agreement stated that it would be conducted in accord with federal law, including the FLSA. *See id.* at 380 ("[T]he Arbitration Agreement incorporates both the applicable substantive law at issue, in this case the FLSA, and the AAA's Commercial Rules. As noted, these provisions would appear to authorize the arbitrator, should [the plaintiff] prevail, to include fees in his or her award."). The Court nonetheless concluded that "it is unlikely that an employee in plaintiff's position, faced with the mere possibility of being reimbursed for arbitrator fees in the future, would risk advancing those fees in order to access the arbitral forum." *Id.* at 380–81 (citing *Shankle*, 163 F.3d at 1234 n.4) (cleaned up). In short, *Nesbitt* controls the present case.

To the extent that questions remain about the doctrine's applicability, the Court finds that Plaintiff sufficiently demonstrated a likelihood that "arbitration would be prohibitively expensive." *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000). Plaintiff is currently unemployed and faces considerable expenses, not including attorney's fees. Doc. 20-2 (Cage Declaration). Put simply, Plaintiff would be unable to pay attorney's and arbitrable fees and costs, and the mere possibility that he would be required to bear these expenses may deter him from bringing a claim at all, and therefore, frustrate the FLSA's objectives. *See* Doc. 20-2; *Shankle*, 163 F.3d at 1234–35; *Nesbitt*, 811 F.3d at 377.

SDS argues that, if the fee-shifting language renders the arbitration clause unenforceable, the Agreement's savings clause requires the impermissible language to be severed from the Agreement. Doc. 26 at 9; Doc. 16 at 21 (Ex. B). The Court notes, however, that even if the fee-shifting language were to be stricken, there still exists a "possibility" that an arbitrator would fill the void with general arbitration rules (for example, the American Arbitration Association's Commercial Arbitration Rules and Mediation Procedures) and decide not to award fees and costs to Plaintiff. *See Nesbitt*, 811 F.3d at 380–81. The Court, therefore, will not save the arbitration clause by severing the fee-shifting language.

### III. Transfer is improper.

SDS asks the Court to transfer the case to the Southern District of Texas if its motion to compel arbitration is denied. Doc. 16 at 7–8. It argues that transfer is required because the Agreement contains a valid forum selection clause. Doc. 16 at 21 (Ex. B); *Atlantic Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. Of Tex.*, 571 U.S. 49, 62 (2013) ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.").

The forum selection clause, even if valid and enforceable, should not be enforced against Plaintiff in this case. As discussed *supra* section I, none of the equitable theories asserted by Defendants bind Plaintiff to the Agreement. SDS neither raises additional arguments explaining why Plaintiff should be bound by the forum selection clause even if he is not a party to the agreement nor makes a forum non conveniens argument. The Court, therefore, concludes that Plaintiff's choice of forum should be respected.

IV.   **Nova's motion for limited discovery is denied as moot**.

Nova asks the Court to allow limited discovery to procure evidence that Plaintiff and Bard L. Fluid Consultants, LLC are alter egos. Doc. 28 at 1. The Court finds that such limited discovery is unwarranted. *See generally SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1514 (10th Cir. 1990) ("[T]he district court has wide discretion in its regulation of pretrial matters." (citation omitted)).

First, and as discussed *supra* section I.A, disregarding the corporate form through an alter ego theory has two requirements: there must be "such unity between corporation and individual that the separateness of the corporation has ceased" *and* "holding only the corporation liable would result in injustice." *See Castleberry*, 721 S.W.2d at 272. While additional discovery could establish the separateness of the corporation has ceased, it is highly unlikely that Defendants could discover evidence sufficient to show injustice. Second, even if Nova were to establish alter ego, the effective vindication doctrine nonetheless prevents the Court from compelling arbitration. *See supra* section II. In short, permitting limited discovery here would unnecessarily expend time and resources.

## CONCLUSION

Accordingly, Defendant SDS Petroleum Consultants, LLC's motion to compel arbitration, Doc. 16, is **DENIED**. Defendant SDS Petroleum Consultants, LLC's motion to transfer forums,

Doc. 16, is **DENIED**. Defendant Nova Mud, Inc's motion to dismiss or compel arbitration, Doc. 10, is **DENIED**. Defendant Nova Mud, Inc.'s motion to conduct limited discovery, Doc. 28, is **DENIED** as moot.

      **SO ORDERED**.

                                        /S/
                                    KEA W. RIGGS
                                    UNITED STATES DISTRICT JUDGE

Case 2:24-cv-00575-KWR-DLM   Document 44   Filed 11/05/24   Page 15 of 15